1

2

3

4

5

6

7

8                 UNITED STATES DISTRICT COURT

9               EASTERN DISTRICT OF CALIFORNIA

10

11  THE REV. DR. MICHAEL
A. NEWDOW, et al.,

12                                      NO. CIV. S-05-17 LKK/DAD

13          Plaintiffs,

14      v.                              O R D E R

15  THE CONGRESS OF THE UNITED
STATES OF AMERICA, et al.,            **TO BE PUBLISHED**

16

17          Defendants.
    _____/

18      Pending before the court are motions to dismiss in what is

19  something of a cause celebre in the ongoing struggle as to the role

20  of religion in the civil life of this nation.  Below, I conclude

21  that binding precedent requires a narrow resolution of the motions,

22  one which will satisfy no one involved in that debate, but which

23  accords with my duty as a judge of a subordinate court.

24      As is known by most everyone, plaintiff, Michael Newdow

25  ("Newdow"), is an atheist whose daughter attends school in the Elk

26  Grove Unified School District ("EGUSD").  He and two other sets of

1

parents and their minor children[1] bring suit to challenge the constitutionality of 4 U.S.C. § 4, which codifies the wording of the Pledge of Allegiance, and the practices of four California public school districts requiring students to recite the Pledge.[2] Plaintiffs bring suit against the United States of America, the United States Congress, and Peter LeFebre, a congressional officer (collectively "federal defendants").  The complaint also names as defendants the State of California, the Governor of California, California's Education Secretary (collectively "state defendants"), and four local California public school districts and their superintendents (collectively "school districts").[3]  The school districts sued are the Elk Grove Unified School District ("EGUSD"), Sacramento City Unified School District ("SCUSD"), Elverta Joint Elementary School District ("EJESD"), and the Rio Linda School District ("RLUSD").[4]  The immediate causes of this order are the

---

[1]  These plaintiffs are identified as Jan Doe and Pat Doe (parents) and Doe Child (minor child), and Jan Roe (parent) and Roechild-1 and Roechild-2 (minor children).

[2]  Plaintiffs bring claims under the Establishment Clause, the Free Exercise Clause, the Equal Protection Clause, and Due Process Clause of the United States Constitution.  Pls.' First Amended Compl. at 14-16.  They also bring claims under Article XVI, Section 5, Article I, Section 4, and Article IX, Section 8 of the California State Constitution.  Id. at 19-20.

[3]  Plaintiffs bring suit against the school districts' superintendents, but in their opposition, they concede that the superintendents should be dismissed.  Opp'n at 27:4-6.

[4]  Plaintiffs request the following relief:

a.  A declaration that Congress, in passing the Act of 1954, violated the Establishment and Free Exercise Clauses;

motions to dismiss filed by the federal and state defendants, as well as the school districts.

**I.**

**BACKGROUND**

**A.   STATUTES AT ISSUE**

**1.   <u>Federal Statute</u>**

The Pledge of Allegiance was initially conceived as part of the commemoration of the 400th anniversary of Christopher Columbus' arrival in America.  See <u>Elk Grove School Dist. v. Newdow</u>, 124 S.Ct. 2301, 2306 (citation omitted)(hereinafter referred to as "<u>Elk Grove</u>" to avoid confusion with the various other Newdow decisions issued along the way to the Supreme Court).  In 1942, as part of an effort "to codify and emphasize the existing rules and customs pertaining to the display and use of the flag of the United States of America," Congress enacted a Pledge of Allegiance to the flag.  H.R. Rep. No. 2047, 77th Cong., 2d Sess. 1 (1942); S. Rep. No. 1477, 77th Cong., 2d Sess. 1 (1942).  It read:  "I pledge

---

> b.  A declaration that by including "under God" in the Pledge, 4 U.S.C. § 4 violates the Establishment and Free Exercise Clauses;
> c.  That Congress immediately remove the words "under God" from the Pledge of Allegiance, as written in 4 U.S.C. § 4;
> d.  To demand that defendant Peter LeFevre, Law Revision Counsel, immediately act to remove the words "under God" from the Pledge of Allegiance as written in 4 U.S.C. § 4;
> e.  To demand defendant Schwarzenegger and Richard J. Riordan immediately repeal Education Code § 52720 or end its enforcement;
> f.  To demand that the School Districts forbid the use of the now-sectarian Pledge of Allegiance; and
> e.  Costs, expert witness fees, attorney fees.

3

allegiance to the flag of the United States of America and to the Republic for which it stands, one Nation indivisible, with liberty and justice for all."  Act of June 22, 1942, ch. 435, § 7, 56 Stat. 380.

Twelve years later, Congress amended the Pledge of Allegiance by adding the words "under God" after the word "Nation."  Act of June 14, 1954, ch. 297, § 7, 68 Stat. 249.  The Pledge of Allegiance now reads:  "I pledge allegiance to the Flag of the United States of America, and to the Republic for which it stands, one Nation under God, indivisible, with liberty and justice for all."  4 U.S.C. § 4.  The House Report that accompanied that legislation observed that, "[f]rom the time of our earliest history our peoples and our institutions have reflected the traditional concept that our Nation was founded on a fundamental belief in God."  H.R. Rep. No. 1693, 83d Cong., 2d Sess., p. 2 (1954).

**2.   California Statute and School Districts' Policy**

California law requires that each public elementary school in the State "conduct[] appropriate patriotic exercises" at the beginning of the school day, and that "[t]he giving of the Pledge of Allegiance to the Flag of the United States of America shall satisfy the requirements of this section."  Cal. Educ. Code § 52720.

////

////

////

////

4

1    Plaintiffs allege that the EGUSD has adopted Rule AR 6115,

2  which provides in pertinent part:

3        Each school shall conduct patriotic exercises daily.  At
         elementary schools, such exercises shall be conducted at
4        the beginning of each school day.  The Pledge of
         Allegiance to the flag will fulfill this requirement.
5

6  Pl.'s Compl. at 8.[5]

7    The EGUSD allowed students who object on religious grounds to

8  abstain from the recitation.  <u>Elk Grove</u>, 124 S.Ct at 2306.

9  **B.  PRIOR LITIGATION**

10   In March 2000, Newdow filed an almost identical suit in this

11 district.  At the time of filing, Newdow's daughter was enrolled

12 in kindergarten in the EGUSD and participated in daily recitation

13 of the Pledge.  The complaint alleged that Newdow had standing to

14 sue on his own behalf and on behalf of his daughter as a "next

15 _____

16        [5] It appears that plaintiffs are confused as to what the
   District requires, since plaintiffs also allege that EGUSD requires
17 that "[e]ach elementary school class [shall] recite the pledge of
   allegiance to the flag once each day."  Plaintiff Newdow states
18 that he has been unable to confirm that EJESD has implemented a
   similar requirement but that RoeChild-1 is being led in such a
19 daily recitation.  Pls.' Compl. at 8, n. 4.  Defendants, however,
   have submitted the AR 6115 for each of the school districts.  As
20 plaintiffs allege, EGUSD's policy states that "[e]ach elementary
   school class [shall] recite the pledge of allegiance to the flag
21 once each day."  Ex. A, Defs.' Req. for Jud. Ntc. (filed July 8,
   2005).  AR 6115 of SCUSD, RLUSD, and EESJD states:
22
         Each school shall conduct patriotic exercises daily.  At
23       elementary schools, such exercises shall be conducted at
         the beginning of each school day.  The pledge of
24       allegiance  will  fulfill  this  requirement . . . .
         Individuals may choose not to participate in the flag
25       salute for personal reasons.

26 Exs. B, C, D, Defs.' Req. for Jud. Ntc.

                                  5

1  friend."

2        The original case was referred to Magistrate Judge Nowinski,

3  who recommended dismissal of the suit, concluding that the Pledge

4  does not violate the Establishment Clause.  Judge Schwartz adopted

5  the findings and recommendations and dismissed Newdow's complaint

6  on July 21, 2000.  In the course of appeal, the Ninth Circuit

7  issued three separate decisions which are briefly reviewed below.

8        1.  **Ninth Circuit Cases**

9            a.  **"Newdow I"**

10       In its first opinion, the Circuit held that Newdow had

11  standing as a parent to challenge practices that interfere with his

12  right to direct the religious education of his daughter.  Newdow

13  v. U.S. Congress, 292 F.3d 597, 602 (9th Cir. 2002)("Newdow I").

14  The Appellate Court found that both the 1954 Act and the School

15  District's policy violated the Establishment Clause.

16           b.  **"Newdow II"**

17       After the Court of Appeals rendered its initial opinion,

18  Sandra Banning, the mother of Newdow's daughter, filed a motion for

19  leave to intervene, or alternatively to dismiss the complaint.  She

20  declared that she and Newdow shared "physical custody" of their

21  daughter.  She asserted that her daughter is a Christian who

22  believes in God and has no objection to the recitation of the

23  Pledge or to hearing others recite the Pledge.  On September 25,

24  2002, the California Superior Court entered an order enjoining

25  Newdow from including his daughter in the lawsuit.

26  ////

6

1    The Ninth Circuit reconsidered Newdow's standing and held that

2  the "grant of sole legal custody to Banning" did not deprive

3  Newdow, as a noncustodial parent, of Article III standing to object

4  to unconstitutional government action affecting his child. Newdow

5  v. U.S. Congress, 313 F.3d 500, 502-03 ("Newdow II").  The court

6  concluded that under California law Newdow retained the right to

7  expose his child to his religious views even if such views differed

8  from the mother's, and that he retained his own right to seek

9  redress for alleged injuries to his parental interests.  Id. at

10  504-5.

11          **c. "Newdow III"**

12    On February 28, 2003, the Ninth Circuit issued an order

13  amending its first opinion and denying rehearing en banc. Newdow

14  v. U.S. Congress, 328 F.3d 466, 468 (9th Cir. 2003).[6]  The amended

15  opinion omitted Newdow I's discussion of Newdow's standing to

16  challenge the 1954 Act and also declined to determine whether

17  Newdow was entitled to declaratory relief regarding the Act's

18  constitutionality, explaining that because the district court did

19  not discuss whether to grant declaratory relief it would also

20  decline to reach that issue.  Id. at 490.  The court, however,

21  continued to hold that the school district's policy violated the

22  Establishment Clause.

23  ////

24  ////

25  _____

26        [6]  Nine judges dissented from the denial of *en banc* review.

1      **2.  <u>Supreme Court Case ("Elk Grove"</u>)**

2      On June 14, 2004, the Supreme Court considered the Ninth's

3   Circuit's decision.  It held that, given the California court's

4   order, Newdow lacked prudential standing to bring suit in federal

5   court.  <u>Id</u>.  The Court also examined Newdow's other claimed bases

6   for standing, which are similar to those claimed here.  It held

7   that Newdow's claim that he attended and will continue to attend

8   classes with his daughter in the future, that he has considered

9   teaching elementary school students, that he has attended and

10  continues to attend school board meetings where the Pledge is

11  recited were insufficient to respond to the court's prudential

12  concerns.  <u>Id</u>. at n. 8.  The majority also concluded that Newdow's

13  taxpayer standing argument failed because it did not amount to the

14  "direct dollars-and-cents injury" that <u>Doremus v. Bd. of Ed. of</u>

15  <u>Hawthorne</u>, 342 U.S. 429, 434 (1952) requires.[7]  <u>Id</u>.

16                                **II.**

17             **THE ALLEGATIONS OF THE PRESENT COMPLAINT**

18  **A.  PLAINTIFF MICHAEL NEWDOW**

19      Plaintiff Michael Newdow is a resident and citizen of the

20  United States, of the State of California, and of Sacramento

21  County.  He is the owner of property situated in Elk Grove and in

22  Sacramento and pays taxes that are used to fund the EGUSD, the

23  SCUSD, and their respective schools.  He is the father of a child

24  _____

25      [7]  In the first suit, Newdow claimed he had taxpayer standing
    because he indirectly paid taxes by virtue of his child custody
26  payments.

1 enrolled in one of EGUSD's schools.  Compl. at 2.

2     Plaintiff Newdow alleges that he is an atheist who denies the

3 existence of any god.  Compl. at 9, 13.  He claims that he would

4 like to run for public office but he objects to governmental use

5 of sectarian religious dogma.  Id. at 10.  He has the joint legal

6 custody of his child, who lives with him approximately 30% of the

7 time.  He concedes that the mother of his child currently has final

8 decision-making authority.  Id.  He alleges, however, that the

9 mother of his child is required to fully consult him prior to

10 making any significant decision regarding the care of their child.

11     Newdow avers that his child is forced to experience teacher-

12 led recitation of the Pledge of Allegiance every morning, even

13 though he has requested the principal of his child's school and the

14 EGUSD that the practice be discontinued.  Newdow volunteers in his

15 child's classroom, and on some of those occasions, the teacher has

16 led the students in reciting the Pledge of Allegiance.  He also

17 alleges that he has attended the EGUSD and SCUSD school board

18 meetings, where the Pledge of Allegiance is recited under the

19 direction of the Boards.  Id. at 9.

20 **B.  PLAINTIFFS JAN AND PAT DOE, AND DOE CHILD**

21     Plaintiffs Jan Doe and Pat Doe are residents and citizens of

22 the United States, of the State of California, and of Sacramento

23 County.  They own property in Elk Grove and pay taxes that are used

24 to fund the EGUSD and its schools.  They are the parents of

25 Doe child, with full legal custody of that child.  Doe child is a

26 seventh grade student enrolled in one of EGUSD's schools. Compl.

9

1  at 2.

2      Jan and Pat Doe are atheists who deny the existence of God.

3  The Does allege that the Pledge of allegiance is recited in

4  Doe child's classes.  Jan and Pat Doe have also attended EGUSD

5  school board meetings where the Pledge is recited, causing the Does

6  to cease attending school board meetings.  The Does have attended

7  their child's classes and other events where the Pledge has been

8  recited.  They have written to the principal of their child's

9  school, asking that the Pledge not be recited in their child's

10 classrooms, but were not provided with any such assurance.  Compl.

11 at 11.

12      Plaintiffs allege that Doe child is an atheist who denies the

13 existence of God.  They contend that Doe child has been forced to

14 experience the recitation of the Pledge that has been led by public

15 school teachers in the class and at assemblies.  Plaintiff Doe

16 child has suffered harassment by other students due to Doe child's

17 refusal to participate in the Pledge.  Compl. at 11.

18 **C.  PLAINTIFFS JAN ROE AND ROECHILD-1 AND ROECHILD-2**

19      Plaintiff Jan Roe is a resident and citizen of the United

20 States, of the State of California, and of Sacramento County.[8]  Jan

21 Roe is also the owner of property situated in the Elverta area of

22 Sacramento county.  Roe pays taxes that are used to fund the EJESD

23

24      [8]  It is unclear from the complaint whether Roe is the father
   or mother of the Roe children.  The defendants refer to this
25 plaintiff as he, and the court follows that practice.  The court
   apologizes if, in fact, this plaintiff is the mother rather than
26 the father of the Roe children.

and its schools.  He is the parent of RoeChild-1 and RoeChild-2, with full joint legal custody of those children.  Jan Roe is an atheist who denies the existence of God.  He alleges that the Pledge has been recited in both of his children's classes.  He has written to the principals of both schools, asking that the Pledge not be recited in the children's classes, but has not been provided any assurances that this would happen.  Roe has been present in the classes of both children while their teachers have led their classes in reciting the Pledge.

Plaintiff RoeChild-1 is a third grade student enrolled in one of the EJESD's schools.  RoeChild-1 is a pantheist, who denies the existence of a personal God.  She has been forced to experience the recitation of the Pledge of Allegiance in her classes and has been led by her teachers in her class and at assemblies in reciting the Pledge.  Compl. at 12.

Plaintiff RoeChild-2 is a kindergarten student enrolled in one of RLSD's schools. Compl. at 2.  RoeChild-2 has been forced to experience the reciting of the Pledge of Allegiance in class and at school assemblies.  Compl. at 12.  Even though RoeChild-2's teachers know about Jan Roe's objections to the Pledge, they have been unable to devise any way "to avoid the indoctrination without other adverse effects to RoeChild-2."  Compl. at 12.

**D.    OTHER ALLEGATIONS**

Each adult plaintiff claims that he or she has been made to feel like a "political outsider" due to the "government's embrace of (Christian) monotheism in the Pledge of Allegiance."  Compl. at

13.   The parents contend that they are deeply involved in the education of their children, and that they have attempted to participate in school matters, but once their atheism becomes known, it interferes with their ability to "fit in" and "effect changes within the political climate of parent-teacher associations,[and] school board meetings." Id. Finally, the adult plaintiffs maintain that they are placed in an untenable situation requiring them "to choose between effectiveness as an advocate for his or her child's education, and the free exercise clause of his or her religious beliefs." Id.

### III.

### DISMISSAL STANDARDS UNDER FED. R. CIV. P. 12(b)(6)

On a motion to dismiss, the allegations of the complaint must be accepted as true. See Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. See id.; see also Wheeldin v. Wheeler, 373 U.S. 647, 648 (1963) (inferring fact from allegations of complaint).

In general, the complaint is construed favorably to the pleader. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). So construed, the court may not dismiss the complaint for failure

to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief.  <u>See</u> <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984) (citing <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  In spite of the deference the court is bound to pay to the plaintiff's allegations, however, it is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged."  <u>Associated General Contractors of California, Inc. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983).

**IV.**

**ANALYSIS**

Pending before the court are motions to dismiss filed by all defendants.  Before turning to the substantive claims made by plaintiffs, the court must resolve the issue of standing.

**A.   STANDING**

To bring suit in a federal court, a party must establish standing to prosecute the action.  <u>Elk Grove</u>, 124 S.Ct. at 2308. The familiar three part test for standing requires pleading that the plaintiff  "(1) . . . has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely as opposed to merely speculative, that the injury will

13

1  be redressed by a favorable decision."  <u>Friends of the Earth,</u>

2  <u>Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,</u> 528 U.S. 180-81

3  (2000)(citation omitted).

4       The defendants do not challenge the standing of Doe

5  plaintiffs, and it clear that Doe plaintiffs have standing to

6  challenge a practice that interferes with their right to direct

7  their children's religious education.  <u>See</u> <u>Doe v. Madison Sch.</u>

8  <u>Dist. No. 321</u>, 177 F.3d 789, 795 (9th Cir. 1999)("Parents have a

9  right to direct the religious upbringing of their children, and

10  on that basis, have standing to protect their right.").  Thus,

11  Doe plaintiffs have standing to challenge EGUSD's policy and

12  practice regarding the recitation of the Pledge because DoeChild

13  is enrolled in the seventh grade.

14       Defendants do, however, contend that Newdow and the Roe

15  plaintiffs lack standing.  I address defendants' contentions

16  below.[9]

17  ////

18  ////

19  ////

20  ////

21  _____

22      [9]  It is true that "the general rule applicable to federal
   court suits with multiple plaintiffs is that once the court
23  determines that one of the plaintiffs has standing, it need not
   decide the standing of others."  <u>See</u> <u>Leonard v. Clark</u>, 12 F.2d 885,
24  888 (9th Cir. 1993)(citation omitted).  Thus, it is arguable that
   it is unnecessary to consider Newdow and the Roes' standing.
25      Nonetheless, the court believes that it must consider the
   standing of each plaintiff since they challenge the Pledge practice
26  in districts in which the Doe children are not registered.

14

1       **1.  Newdow**

2           **a.   Parental Standing**

3       Newdow asserts claims against both EGUSD and SCUSD.  In

4   addition to suing as "next friend" for his child, he also

5   contends that he has standing to sue because he has attended

6   government meetings, including school board meetings, where the

7   Pledge has been administered, and that he is a state taxpayer

8   and owns property in Elk Grove and Sacramento, and pays local

9   property taxes to support their school districts.[10]

10      I turn first to whether Newdow has standing as a parent to

11  challenge the school districts' policies, and conclude that he

12  lacks prudential standing.  In his opposition to the motion,

13  Newdow appears to concede that the custody arrangement has not

14  changed since the Supreme Court rendered its decision in Elk

15  Grove concluding that he was without standing.  Whatever the

16  personal relationship Newdow has with his daughter,[11] the Supreme

17  Court has made clear that "having been deprived under California

18  law of the right to sue as next friend, Newdow lacks prudential

19  standing to bring this suit in federal court."  Elk Grove, 124

20  S.Ct. 2301, 2312 (2004).

21  ////

22

23          [10]   The Roe defendants make similar claims concerning their
    school districts.
24

25          [11]   Newdow alleges that "there has never been any indication
    that his love of, care for or dedication to his child is anything
    less than that of the most wonderful and devoted parent on Earth."
26  Opp'n at 5.

1

### b.   Additional Grounds

2      As he did in the previous litigation, Newdow also asserts

3   additional bases for standing, namely that he has attended

4   school board meetings where the Pledge is recited, and that he

5   has taxpayer standing.

6       As to the attendance assertion of standing, the Supreme

7   Court concluded that even if "these arguments suffice to

8   establish Article III standing, they do not respond to our

9   prudential concerns."  Elk Grove, 124 S.Ct. at 2312, n.8.  I am,

10  of course, bound by the holding.

11     As for taxpayer standing, in the previous litigation,

12  Newdow admitted that he did not reside in or pay taxes to the

13  school district, but argued that he paid taxes through child

14  support payments to the child's mother.  As noted above, the

15  Court rejected this argument because it did not "amount to the

16  'direct dollars-and-cents injury.'"  This case presents a

17  different issue.  In this lawsuit, Newdow alleges that he is the

18  owner of real property in Sacramento and in Elk Grove, and "pays

19  the associated local property taxes in both locales."[12]  Compl.

20  at 10.

21     Defendants give short shrift to plaintiffs' taxpayer

22

23     [12]  The other plaintiffs make similar claims.  Doe plaintiffs
    allege that they are residents of Sacramento, California and are
24  owners of real property located in Sacramento and pay the
    associated local property taxes.  Part of those taxes, they allege,
25  goes to the EGUSD.  Compl. at 11.  Plaintiff Jane Roe maintains
    that he is a resident of Elverta, California and is the owner of
26  real property in Elverta, California and pays the associated local
    property taxes.  Id. at 12.

1  standing, citing the Supreme Court's analysis in Elk Grove.

2  That argument simply does not address the present taxpayer

3  standing argument premised on the plaintiff's status as a

4  property owner. See Fed. Defs.' Mot. at 17, School Dists.' Mot.

5  at 14, State Defs.' Mot. at 4-5.  Nonetheless, as I now explain,

6  plaintiffs' taxpayer standing argument must fail.

7      The Ninth Circuit has explained that there is a limited

8  Establishment Clause exception to the general rule against

9  federal taxpayer standing.  Cammack v. Waihee, 932 F.2d 765, 772

10 (9th Cir. 1991)("This notion of standing is consistent with the

11 traditional judicial hospitality extended to Establishment

12 Clause challenges by taxpayers generally.")(citations omitted).

13 Even so, plaintiffs challenge the use of municipal and state

14 rather than federal tax revenues.  Consequently, Doremus v.

15 Board of Educ. of Borough of Hawthorne, 342 U.S. 429 (1952),

16 controls the requirements for taxpayer standing.[13]  To establish

17 standing under Doremus, a plaintiff must merely allege that the

18 activity challenged "is supported by any separate tax or paid

19 for from any particular appropriation or that it adds any sum

20 whatever to the cost of conducting the school."  Id. at 433.

21 ////

22 ////

23

24     [13]  In Doremus, a taxpayer challenged a state statute that
   provided for the reading of verses from the Bible at the beginning
25 of each school day.  The Supreme Court held that the taxpayer
   lacked standing because the action was not a "good-faith
26 pocketbook" challenge to the state statute.  342 U.S. at 430.

17

1    Plaintiffs argue that "teachers' salaries alone" in one

2 school district at issue are approximately $138 million and that

3 if reciting "under God" adds approximately 1.25 seconds to the

4 Pledge, saying "under God" costs the taxpayers in said district

5 more than $5,000 per year.  Id. at 119.  The argument does not

6 lie.[14]

7    Under Doremus and Doe, "the taxpayer must demonstrate that

8 the government spends 'a measurable appropriation or

9 disbursement of school-district funds occasioned solely by the

10 activities complained of.'"  Doe v. Madison Sch. Dist. No. 321,

11 177 F.3d 789, 794 (9th Cir. 1999) (emphasis added) (quoting

12 Doremus v. Board of Education, 342 U.S. 429, 434 (U.S. 1952)).

13 see also Taxpayers' Suits, A Survey and Summary, 69 YALE L.J.

14 895, 922 (1960) (Doremus "stands for the proposition that a

15 state or municipal taxpayer does not have a direct enough

16 interest for his suit to constitute an article III case or

17 controversy unless the activity challenged involves an

18 expenditure of public funds which would not otherwise be made."

19 Doe, 177 F.3d at 794).  While plaintiffs' argument is ingenious,

20 it cannot prevail.  Under Doremus, plaintiffs must prove that

21 the words "under God" "adds cost to the school expenses or

22 varies by more than an incomputable scintilla . . . ."  Id. at

23 431.  Plaintiffs' calculations fail because teachers in this

24 _____

25    [14]  Plaintiffs expressly state that they have no objection to
   the recitation of the Pledge.  Comp. at 21.  Their only objection
26 is to the inclusion of the phrase "under God," and suggest a return
   to the pre-1954 version of the Pledge.

state are not paid on an hourly basis, and thus the few seconds a day relied on simply do not meet the test.  I conclude that Newdow lacks standing and his claim relative to the state and district defendants must be dismissed.[15]

## 2. **Roe Plaintiffs**

Defendants challenge whether Jan Roe has standing to bring suit in this litigation.  In the first amended complaint, Jan Roe states that he is the parent of RoeChild-1 and RoeChild-2, with full legal custody of those children.  Compl. at 2. Defendants contend that "this statement is insufficient to support a finding that Plaintiffs Jan Roe and Roe children are proper parties to raise this dispute."  Fed. Defs.' Mot. at 15. Defendants assert that plaintiffs have "failed to allege that Jan Roe has final-decision-making authority regarding the educational upbringing of Roe Children."[16]  Id.

---

[15]  Newdow also asserts that he would like to run for public office but that he believes doing so would be futile because of the public's antipathy towards atheism.  He believes his inability to obtain elected office "is due in part to the official endorsement of monotheism contained in the Pledge."  The court will assume arguendo standing since it is clear that the argument simply has no merit.  Acknowledging that there is public antipathy directed towards atheists, common experience teaches that the Pledge has no bearing on that fact.

[16]  Defendants explain that they have attempted to resolve this issue without the court's involvement and asked plaintiff's counsel for clarification.  Cassidy Decl. ¶ 2.  In response, plaintiffs' counsel provided Jan Roe's declaration and a family law stipulation and order indicating that Jan Roe has joint legal and joint physical custody of Roe children.  The parties have not submitted Jan Roe's declaration for the court's consideration. Defendants also explain that Newdow has indicated that the current custody arrangement of Roe children is likely to be changing as a new arrangement is in the process of being negotiated.  Id. ¶ 4.

1    In Elk Grove, the Supreme Court's admonished that "it is

2  improper for the federal courts to entertain a claim by a

3  plaintiff whose standing to sue is founded on family rights that

4  are in dispute when prosecution of the lawsuit may have an

5  adverse effect on the person who is the source of plaintiff's

6  standing."  124 S.Ct. at 2312.  That conclusion has no bearing

7  on the instant case since there is no indication that family

8  rights are in dispute with regard to the Roe children.  It is

9  important to recall that what is before the court is a motion to

10 dismiss, requiring that the court give the plaintiff the benefit

11 of every reasonable inference to be drawn from the "well-

12 pleaded" allegations of the complaint. See Retail Clerks Intern.

13 Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753

14 n.6 (1963).  Thus, the plaintiff need not plead a particular

15 fact if that fact is a reasonable inference from facts properly

16 alleged. See id.; see also Wheeldin v. Wheeler, 373 U.S. 647,

17 648 (1963) (inferring fact from allegations of complaint).

18 Plaintiff has properly alleged that he has custody of his

19 children and thus by reasonable inference decision-making power

20 over them, and defendant has tendered nothing to rebut that

21 inference.  The court concludes that plaintiff Roe has

22 sufficiently pled standing.

23    Having resolved the standing question, I turn to the

24 substance of the complaint.  As I explain below, the court

25 concludes that it is bound by the Ninth Circuit's previous

26 determination that the school district's policy with regard to

the pledge is an unconstitutional violation of the children's right to be free from a coercive requirement to affirm God.  The court also concludes, however, that by virtue of that determination, the claims concerning the Pledge itself are rendered moot.

**B.   RECITATION OF THE PLEDGE IN THE CLASSROOM**

    **1.   <u>Binding Effect of Newdow III</u>**

In <u>Newdow III</u>, the Ninth Circuit amended its previous opinion, declining to rule on the constitutionality of the federal statute at issue in this litigation, and also declining to reach whether it must grant Newdow's claim for declaratory relief as to that statute.  The court, however, continued to hold, as it did in <u>Newdow I</u>, that the Elk Grove School District's practice of teacher-led recitation of the Pledge "aims to inculcate in students a respect for the ideals set forth in the Pledge, including the religious values it incorporates."  I must now address the binding effect of the Ninth Circuit's holding in <u>Newdow III</u>.

While the Supreme Court ruled in <u>Elk Grove</u> that plaintiff Newdow lacked prudential standing to raise the claim and reversed the Ninth Circuit's decision in <u>Newdow III</u>, the High Court did not address the Ninth Circuit's conclusion concerning the school district's policy.  Thus, the question is what effect the reversal on other grounds of <u>Newdow III</u> by <u>Elk Grove</u> has upon this court's freedom to consider anew plaintiffs' claims and defendants' oppositions.

1      It is established that there is a distinction between a

2   case being reversed on other grounds and a case being vacated.

3   A decision that is reversed on other grounds may still have

4   precedential value, whereas a vacated decision has no

5   precedential authority.  See Durning v. Citibank, N.A., 950 F.2d

6   1419, 1424 n. 2 (9th Cir. 1991) ("A decision may be reversed on

7   other grounds, but a decision that has been vacated has no

8   precedential authority whatsoever."); see also O'Connor v.

9   Donaldson, 95 S.Ct. 2486, 2495 (1975) ("Of necessity our

10  decision vacating the judgment of the Court of Appeals deprives

11  that court's opinion of precedential effect . . . .").

12     During oral argument, counsel for the federal defendants

13  argued that the Ninth Circuit lacked authority as a

14  jurisdictional matter to proceed on the merits in Newdow III,

15  and thus, the decision is a nullity, citing Steel Co. v.

16  Citizens for a Better Environment, 523 U.S. 83 (1998).  I cannot

17  agree that I am free, as defense counsel urges, to take a "fresh

18  look" at the matter.  Defendants' argument rests on an erroneous

19  premise, that there is no distinction between prudential

20  standing and Article III standing.  Indeed, however, the Supreme

21  Court in Steel Co. recognized the distinction, and limited its

22  holding to Article III standing.  Steel Co., 523 U.S. at 97

23  ("The latter question is an issue of statutory standing.  It has

24  nothing to do with whether there is a case or controversy under

25  Article III.").

26  ////

1      Prudential standing and Article III standing are distinct.

2  Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 16 ("[O]ur

3  standing jurisprudence contains two strands:  Article III

4  standing, which enforces the Constitution's case or controversy

5  requirement; and prudential standing, which embodies 'judicially

6  self-imposed limits on the exercise of federal

7  jurisdiction[.]'") (citations omitted).  Important to the

8  present issue is that in Elk Grove, the Supreme Court determined

9  that Newdow lacked prudential standing but did not dispute the

10  existence of Article III standing.  Elk Grove, 542 U.S. at 29

11  ("the Court does not dispute that respondent Newdow . . .

12  satisfies the requisites of Article III standing") (Rehnquist,

13  J., concurring).

14      When a court lacks Article III standing, there is no

15  jurisdiction because there is no case or controversy within the

16  meaning of the Constitution.  A federal court, however, may

17  reach the merits when only prudential standing is in dispute.

18  See, e.g., American Iron and Steel Institute v. Occupational

19  Safety and Health Admin., 182 F.3d 1261, 1274 (11th Cir. 1999)

20  (citing Steel Co., supra, for the proposition that "courts

21  cannot pretermit Article III standing issues, but can pretermit

22  prudential standing issues, in order to resolve cases where the

23  merits are relatively easy"); Environmental Protection

24  Information Center, Inc. v. Pacific Lumber Co., 257 F.3d 1071,

25  1076 (9th Cir. 2001) (suggesting review of the merits prior to a

26  prudential standing determination is proper where "the parties

1   retain a stake in the controversy satisfying Article III").  In

2   sum, because a court may reach the merits despite a lack of

3   prudential standing, it follows that where an opinion is

4   reversed on prudential standing grounds, the remaining portion

5   of the circuit court's decision binds the district courts below.

6   Contrary to the urging that a "fresh look" is demanded by Steel

7   Co., this court remains bound by the Ninth Circuit's holding in

8   Newdow III.

9         **2.  The Newdow III decision**

10        In Newdow III, the Ninth Circuit applied the "coercion

11  test" formulated by the Supreme Court in Lee v. Weisman, 505

12  U.S. 577, 580 (1992), and concluded that the district's pledge

13  policy "impermissibly coerces a religious act."[17]  The court

14  determined that the school district's policy, like the school's

15  action in Lee of including prayer at graduation ceremonies,

16  "places students in the untenable position of choosing between

17  participating in an exercise with religious content or

18  protesting."  The court observed that the "coercive effect of

19  the policy here is particularly pronounced in the school setting

20  given the age and impressionability of schoolchildren . . . ."

21  Newdow III, 328 F.3d at 488.  Finally, the court noted, that

22  non-compulsory participation is no basis for distinguishing it

23  _____

24        [17]  In Lee, a public school student and her father sought a
    permanent injunction to prevent the inclusion of invocations and
    benedictions in graduation ceremonies of city public schools.  The
25  Supreme Court held that public schools could not provide for
    "nonsectarian" prayer to be given by a clergyman selected by the
26  school.

from <u>West Virginia State Board of Education v. Barnette</u>, 319
U.S. 624 (1943), where the Court held unconstitutional a school
district's wartime policy of punishing students who refused to
recite the Pledge and salute the flag.[18]   The Ninth Circuit
concluded that even without a recitation requirement for each
child, "the mere presence in the classroom every day as peers
recite the statement 'one nation under God' has a coercive
effect."   <u>Newdow III</u>, 328 F.3d at 488.   "The 'subtle and
indirect' social pressure which permeates the classroom also
renders more acute the message to non-believing school-children
that they are outsiders."   <u>Id</u>. (citing <u>Lee</u>, 505 U.S. at 592-93).
The court then determined that "there can be little doubt that
under the controlling Supreme Court cases, the school district's
policy fails the coercion test."   <u>Id</u>.   Accordingly, the court
held that "the school district's policy and practice of
teacher-led recitation of the Pledge, with the inclusion of the
added words 'under God,' violates the Establishment Clause."
<u>Newdow v. U.S. Congress</u>, 328 F.3d 466, 490 (9th Cir. 2002).

The EGUSD school policy at issue in this litigation, and
which affect Newdow and the Doe plaintiffs, is identical to the
one in the prior litigation.   As noted above, defendants have
submitted AR 6115 for EJESD which, on its face, does not mandate
daily recitation of the Pledge.   Plaintiff, however, alleges
that in any case RoeChild-1 is being led in such a daily

---

[18]   <u>Barnette</u> was decided before the 1954 Act added the words
"under God" to the Pledge.

1   recitation.  That allegation suffices to bring the complaint

2   within the ambit of § 1983 which provides jurisdiction to

3   restrain unconstitutional customs or usage, i.e., practice.[19]

4        Because this court is bound by the Ninth Circuit's holding

5   in Newdow III, it follows that the school districts' policies

6   violate the Establishment Clause.  Accordingly, upon a properly-

7   supported motion, the court must enter a restraining order to

8   that effect.  Because of that conclusion, however, as I explain

9   below, it follows that the plaintiffs' federal claims are

10  rendered moot.

11       **3.  Mootness**

12       The doctrine of mootness restricts judicial power to live

13  cases and controversies.  Lujan v. Defenders of Wildlife, 504

14  U.S. 555, 559-61 (1992).  As with Article III standing, "[t]he

15  federal courts lack power to make a decision unless the

16  plaintiff has suffered an injury in fact, traceable to the

17  challenged action, and likely to be redressed by a favorable

18  decision."  Snake River Farmers' Ass'n v. Dept. of Labor, 9 F.3d

19  792, 795 (9th Cir. 1993).  If one of these required

20  prerequisites to the exercise of judicial power is absent, the

21  judicial branch loses its power to render a decision on the

22  merits of the claim.  Nome Eskimo Community v. Babbitt, 67 F.3d

23

24       [19]  Again, the complaint alleges that in each of the minor
     plaintiffs' classes, there is teacher-led recitation of the Pledge
25   of Allegiance every morning, and that each child has suffered by
     virtue thereof, and that the parents' ability to guide their
26   childrens' religious beliefs have been adversely affected.

1  813 (9th Cir. 1995).

2      In the case at bar, the plaintiffs' claims, in so far as

3  they relate to the in-class pledges, are resolved because the

4  Ninth Circuit has held that the school policy mandating the

5  Pledge is unconstitutional, and as the court indicated above,

6  upon proper motion it will issue an appropriate injunction.

7  Upon the issuance of that injunction, plaintiffs will no longer

8  suffer from an injury-in-fact which would require redress from

9  this court.  Thus, any claims relating to federal statute must

10 be dismissed.

11 **C.   PLEDGE RECITATION AT SCHOOL BOARD MEETINGS AND OTHER
       GOVERNMENTAL MEETINGS**

12

13     Aside from the allegations related to the school districts'

14 compulsory administration of the Pledge to student-plaintiffs,

15 the complaint also alleges that each of the parents have,

16 independent of their relationship to their offspring, cognizable

17 claims.  Specifically, the adult plaintiffs assert that they

18 have attended school board meetings where the Pledge has been

19 recited.  Compl. at 9- 12.[20]   These parent-plaintiffs submit

20 _____

21     [20] As noted above, the Supreme Court held that Newdow lacks
   prudential standing to raise this argument, <u>Elk Grove</u>, 124 S.Ct.
   at 2312, n.8, but plaintiffs Doe and Roe arguably have standing to

22 bring this claim.  Plaintiffs argue that they have standing to
   bring this suit as it applies to the Pledge being recited at school

23 board meetings because they are forced to "confront government-
   sponsored religious dogma." Compl. at 9.  Plaintiffs cite to cases

24 where physical religious structures are erected on federal land.
   <u>See</u> <u>Van Orden v. Perry</u>, 351 F.3d 173 (5th Cir. 2003), <u>cert.</u>

25 <u>granted</u>, 125 S.Ct. 1240 (2005); <u>ACLU v. McCreary County</u>, 361 F.3d
   928 (6th Cir. 2004), <u>cert. granted</u>, 125 S.Ct. 944 (2005); <u>Allegheny</u>

26 <u>County v. Greater Pittsburgh ACLU</u>, 492 U.S. 573 (1989).  The Ninth

1  that when they are faced with the Pledge of Allegiance, "a

2  significant hurdle arises, interfering with an ability to 'fit

3  in' and effect changes within the climate of parent-teacher

4  associations, school board meetings, and the like." Id. at

5  ¶ 92.  In essence, plaintiffs argue that they are branded with a

6  "political outsider" status.  Id. at ¶ 91.

7       Plaintiffs' arguments must be rejected.  The Pledge itself

8  does not compel recitation anywhere, at any time.  Thus,

9  properly understood, plaintiffs are complaining about a school

10  board policy or practice.  Yet the present complaint does not

11  seek relief from that practice but attacks the content of the

12  Pledge, which is significant only because of that practice.

13  Even it this were not the case, however, the present status of

14  Establishment Clause jurisprudence compels rejection of

15  plaintiffs' claim in this regard.

16       It cannot be gainsaid that the practice of reciting the

17  Pledge in the context of adults attending a school board meeting

18  tenders a different question than the recitation of the Pledge

19  in a classroom.  In Lee v. Weisman, the case upon which the

20  Newdow III court relied, the Supreme Court explained the

21  inherent differences between religious activity involving

22

23  Circuit has repeatedly held that inability to unreservedly use
   public land suffices as injury-in-fact.  Buono v. Norton, 371 F.3d

24  543, 548 (9th Cir. 2004).  The instant case is distinguishable from
   this line of cases because it does not involve physical structures.

25  The court, however, need not rule on plaintiffs' standing as it
   relates to the school board meetings because, as explained,

26  plaintiffs have failed to plead a cognizable claim.

1  students in a public school system and, for instance, a prayer

2  said at the opening of a session of a state legislature, the

3  issue at bar in Marsh v. Chambers, 463 U.S. 783 (1983).  In Lee,

4  the court emphasized "recognition [of] the real conflict of

5  consequence by the young student."  Lee, 505 U.S. at 596.  In

6  contrast the Court explained:

> [t]he atmosphere at the opening of a session of a
> state legislature where adults are free to enter and
> leave with little comment and for any number of
> reasons cannot compare with the constraining potential
> of the [the student's graduation]. . . .

10  Id.

11    Plaintiffs' claim must be rejected because both the Ninth

12  Circuit and the Supreme Court have applied the coercion test and

13  the "outsider" status claim with great restraint, recognizing it

14  only in the context of children who are more likely to be

15  pressured and negatively impacted.  Here, plaintiffs are adults

16  who, like the legislators in Marsh, are "free to enter and

17  leave" at the opening of a school board session. [21]

18    For all the above reasons, the motion to dismiss the

19  parents' suit relative to school board meetings must be granted.

20  ////

21  ////

22

---

23    [21]  This court is, of course bound by the distinction noted
24  above, but as the saying goes, it is not gagged.  The cramped view
    of the Establishment Clause underlying the distinction between
24  Marsh and Lee ignores a primary function of the First Amendment;
25  namely, to act as a bulwark barring the introduction of sectarian
    division into the body politic, and thus advancing the ideal of
26  national unity.

**IV.**

**CONCLUSION**

For all the foregoing reasons, the court ORDERS as follows:

1.  Defendants' motions to dismiss the claim as to the recitation of the Pledge in a classroom is DENIED; and

2.  As to all the other causes of action, the motion is GRANTED.

IT IS SO ORDERED.[22]

DATED:  September 14, 2005.

/s/Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[22]  This court would be less than candid if it did not acknowledge that it is relieved that, by virtue of the disposition above, it need not attempt to apply the Supreme Court's recently articulated distinction between those governmental activities which endorse religion, and are thus prohibited, and those which acknowledge the Nation's asserted religious heritage, and thus are permitted.  As last terms cases, <u>McCreary County v.  ACLU</u>, 125 S.Ct. 2722, 2005 WL 1498988 (2005) and <u>Van Orden v. Perry</u>, 125 S.Ct. 2854, 2005 WL 1500276 (2005) demonstrate, the distinction is utterly standardless, and ultimate resolution depends of the shifting, subjective sensibilities of any five members of the High Court, leaving those of us who work in the vineyard without guidance.  Moreover, because the doctrine is inherently a boundary-less slippery slope, any conclusion might pass muster.  It might be remembered that it was only a little more than one hundred ago that the Supreme Court of this nation declared without hesitation, after reviewing the history of religion in this country, that "this is a Christian nation."  <u>Church of the Holy Trinity v. United States</u>, 143 U.S. 457, 471  (1892).  As preposterous as it might seem, given the lack of boundaries, a case could be made for substituting "under Christ" for "under God" in the pledge, thus marginalizing not only atheists and agnostics, as the present form of the Pledge does, but also Jews, Muslims, Buddhists, Confucians, Sikhs, Hindus, and other religious adherents who, not only are citizens of this nation, but in fact reside in this judicial district.